UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ERNEST GILBERT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:14-cv-00630-RLY-DKL |
| | ) | |
| DR. MARCEL ROHANA, M.D., | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Ernest Gilbert, brings this action pursuant to 42 U.S.C. § 1983, alleging that the Defendant, Dr. Marcel Rohana, failed to give him adequate medical care while he was housed at the Marion County Jail. Dr. Rohana now moves for summary judgment. For the reasons set forth below, the court **GRANTS** Dr. Rohana's motion.

**I.      Background**

  **A.      Medical Care at the Jail**

Correct Care Solutions ("CCS") contracts with the Marion County Jail to provide medical care to inmates at the Jail. (Deposition of Dr. Rohana ("Rohana Dep.") at 11-13). At all relevant times, Dr. Rohana was employed by CCS as the medical director for the Jail. (*Id*. at 12). As medical director, Dr. Rohana's duties included overseeing medical care at the Jail. (*Id*. at 13). In addition to Dr. Rohana, CCS employed a nurse practitioner and several other nurses. (*Id*. at 14).

CCS is responsible for all medical care provided at the Jail with only a few exceptions; those exceptions include psychiatric care, dialysis, and dental care, which are all provided by subcontractors. (*Id*. at 16). For dialysis at the Jail, CCS contracts with a separate provider, Chardonnay. (*Id*.). Dialysis is offered at the Jail in a separate unit located in the Marion County Arrestee Processing Center ("APC"). Chardonnay typically offers dialysis on Mondays, Wednesdays, and Fridays. (Deposition of Dr. Mishler ("Mishler Dep.") at 22). Dr. Dennis Mishler, board certified in nephrology, contracts with the Jail to provide dialysis to inmates. (*Id*. at 6, 12).

**B.     Plaintiff's Medical Care**

Plaintiff was born in 1963. (Filing No. 2, Deposition of Ernest Gilbert ("Gilbert Dep.") at 6). He suffers from high blood pressure, atrial fibrillation, poor circulation in his legs, and seizures. He also suffers from renal failure, and has been receiving dialysis treatments since January 2006. (Plaintiff's Answers to Defendant's First Set of Interrogatories No. 9). Plaintiff typically receives dialysis three days a week – on Tuesdays, Thursdays, and Saturdays.

On Tuesday, October 15, 2013, Plaintiff drove himself to dialysis treatment after his ride failed to show. (Gilbert Dep. at 10-11). Following dialysis, Plaintiff was involved in a car accident in Indianapolis as he drove home. (*Id*. at 12). Plaintiff admitted to the officer that he was a habitual traffic offender and was driving without a license. (*Id*. at 9). He was arrested and taken to the APC. (*Id*. at 13).

At the APC, Plaintiff met with a nurse and explained to her the medications he was taking. (*Id.* at 15-17). After meeting with the nurse, Plaintiff waited at the APC

until the next day, October 16, when he was taken to Marion County Jail 1. (*Id*. at 17-18).

On October 17, Plaintiff received his initial hearing at the Jail. (*Id*. at 32-33). He was then taken to the medical cell block, where he met with Dr. Rohana to change the bandage on his right forearm where his dialysis fistula, which had been surgically repaired, is located. (*Id*. at 20-21). After Dr. Rohana removed the bandage, Plaintiff began bleeding. (*Id*. at 21). Dr. Rohana then placed a pressure bandage on his forearm, wrapped it tight, and told Plaintiff he would see him "in a day or two." (*Id*.). Plaintiff informed Dr. Rohana of his need for dialysis and for his medications. (*Id*. at 80).

The next day, Friday, October 18, Plaintiff was taken to dialysis and asked to see Dr. Mishler. (*Id*. at 22-24). When Dr. Mishler arrived, Plaintiff explained to the doctor that he had not yet received any of his medications. (*Id*. at 24-25). Dr. Mishler therefore wrote a list of Plaintiff's medications. (Mishler Dep. at 68-70). Plaintiff testified that his dialysis went fine. (Plaintiff Dep. at 58).

The list of medications prepared by Dr. Mishler was reviewed and co-signed for by Dr. Rohana that same day, October 18. (Rohana Dep. at 27; Declaration of Dr. Rohana ("Rohana Dec.") ¶ 2, Ex. A). Notations on the medications sheet indicate Plaintiff was provided with the medications as prescribed beginning on October 19 and continuing to his release date on October 23. (*See* Mishler Dep. Ex. 12). The only exception is Plaintiff's prescription for Nifedipine, a calcium channel blocker. (*Id*.). Although it is written on the medications log, there are no notations from a nurse indicating the medication was given. (*Id*.). In any event, Dr. Rohana believed that

3

Plaintiff was receiving his medications as prescribed. (Rohana Decl. ¶ 3). Plaintiff agrees he was provided some of his medications, but contends he was never given his blood pressure medicine, heart medicine, or blood thinners. (Plaintiff Dep. at 24-26).

On Saturday, October 19, Plaintiff met with Dr. Rohana a second time. (*Id*. at 27). Dr. Rohana changed the bandage on Plaintiff's forearm, and Dr. Rohana told Plaintiff he would see him again when it was time for his bandage to be changed. (*Id*. at 28).

On Monday, October 21, Plaintiff received another dialysis treatment without incident. (*Id*. at 28-29). The following day, Plaintiff received his bond hearing and was set to be released. (*Id*. at 33-34). For whatever reason, Plaintiff was taken back to his cell, and his forearm began bleeding at the fistula site. (*Id*. at 34). He was taken to another holding cell, and then taken to Wishard Hospital for treatment. (*Id*. at 34, 36). Dr. Rohana was contacted and approved Plaintiff's transport to Wishard Hospital. (Rohana Dep. at 53; Rohana Decl., ¶ 4, Ex. B).

After receiving treatment at Wishard Hosptial, Plaintiff was discharged and returned to the Jail. (Plaintiff Dep. at 37-38). Plaintiff's forearm began bleeding again, and Dr. Rohana once again approved Plaintiff's transportation back to Wishard Hospital for treatment. (Rohana Dep. at 53; Rohana Decl., ¶ 4, Ex. B). In the early morning hours of October 23, Plaintiff was transported to Wishard Hospital via paddy wagon. (Plaintiff Dep. at 39-40). Plaintiff's forearm was treated again, and the bleeding stopped. (*Id*. at 41).

Plaintiff had already been released, so there was a discussion among the Jail staff as to why he was still being held. (*Id*. at 42). Dr. Rohana was not a party to those

4

conversations. (*Id*.). Plaintiff was returned to the Marion County Jail, where it was confirmed that he had been released. (*Id*. at 41-42, 45). At approximately 2:00 p.m., Plaintiff was let out of the Jail, and picked up by his wife. (*Id*. at 46-47). Plaintiff did not disagree with his release from the Jail, and he did not ask to stay at the Jail to receive dialysis. (*Id*. at 73-74). Dr. Rohana was not notified that Plaintiff had been released. (Rohana Dep. at 55, 66).

At the time Plaintiff was picked up by his wife, Plaintiff was not feeling well, and took medications that had been brought by his wife. (Plaintiff Dep. at 47-48). When he arrived at home, he went to bed, watched a game on television, and eventually fell asleep. (*Id*. at 48). Plaintiff woke up during the night, and told his wife he needed to go to the hospital. (*Id*.). An ambulance arrived for Plaintiff, and he passed out. (*Id*. at 48-49). He does not remember anything for the next three to four days. (*Id*. at 49). Plaintiff went into cardiac arrest, and was diagnosed with hypertensive urgency, brachycardia, altered mental state, hyperkalemia, and end state renal disease.

## II. Summary Judgment Standard

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). Summary judgment is appropriate if the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating whether the movant has met the standard, the court reviews the record as a whole and

draws all reasonable inferences in favor of the nonmoving party. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009).

The initial burden rests with the moving party to demonstrate "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). After the moving party demonstrates the absence of a genuine issue for trial, the responsibility shifts to the non-movant to "go beyond the pleadings" and point to evidence of a genuine factual dispute precluding summary judgment. *Id*. at 322-23. "If the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in h[is] favor on a material question, then the court must enter summary judgment against h[im]." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 585-87); *Celotex*, 477 U.S. at 322-24; *Anderson*, 477 U.S. at 249-52.

**III.    Discussion**

The claims in this action are brought pursuant to 42 U.S.C. § 1983. "Section 1983 is not itself a source of substantive rights; instead it is a means for vindicating federal rights elsewhere conferred." *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997). Because Plaintiff was a pretrial detainee rather than a prisoner during the time he was incarcerated in the Marion County Jail, his claims are properly analyzed under the Fourteenth Amendment's Due Process Clause. *Mayan v. Weed*, 310 Fed.Appx. 38, 40 (7th Cir. 2009) (citing *Williams v. Rodriguez*, 509 F.3d 392, 401 (7th Cir. 2000)).

**A.    The Deliberate Indifference Standard Applies**

Before addressing the merits, the court must first address Plaintiff's argument that the Supreme Court's recent decision in *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), requires the court to apply an objective reasonableness standard, rather than the subjective deliberate indifference standard, to Plaintiff's denial of medical care claims against Dr. Rohana. In *Kingsley*, a pretrial detainee brought an excessive force claim against several jail officers under the Fourteenth Amendment's Due Process Clause. The question presented was whether a pretrial detainee must show that the officers were subjectively aware that their use of force was unreasonable, or whether the officers' use of that force was objectively unreasonable. *Id*. at 2470. The Court held that "the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one." *Id*. at 2473.

The court finds *Kinglsey* did not alter the legal standard for denial of medical treatment claims brought by pretrial detainees like Plaintiff. *Kingsley* was limited to excessive force claims brought by pretrial detainees; the Court did not comment on the appropriate standard for denial of medical treatment claims brought by such detainees. Further, since *Kingsley*, district courts have continued to use the deliberate indifference standard in denial of medical treatment claims. *See Carruthers v. Corrections Corp. of Am.*, No. 2:14-cv-72-WTL-DKL, 2015 WL 4758835, at *2 (S.D. Ind. Aug. 12, 2015) (applying deliberate indifference standard to pretrial detainee's medical needs claim post-*Kingsley*); *Kennedy v. Bd. of Cnty. Comm'rs for Oklahoma Cnty.*, No. CIV-15-398-D, 2015 WL 4078177, at *1 n.6 (W.D. Okla. July 6, 2015) (noting *Kingsley* did not "alter the standard applicable to medical care claims"); *Roberts v. C-73 Med. Dir.*, No. 1:14-cv-

7

5198-GHW, 2015 WL 4253796, at *3 n.3 (S.D.N.Y. July 13, 2015) ("The decision in *Kingsley* dealt only with excessive force claims, thus the Court continues to abide by Second Circuit precedent setting forth a subjective standard for cases involving allegations of deliberate indifference to a pretrial detainee's serious medical needs . . . ."); *Austin v. Cnty. Of Alameda*, No. 15-cv-00763-HSG, 2015 WL 4051997, at *3 (N.D. Cal. July 2, 2015) (applying deliberate indifference standard to pretrial detainee's medical needs claim post-*Kingsley*); *McBride v. Houston Cnty. Health Care Auth.*, No. 1:12-cv-1047-MHT, 2015 WL 3892715, at *15 (M.D. Ala. June 24, 2015) (same); *Ray v. Michelle*, Civil Action No. 15-7-DLB, 2015 WL 4068022, at *7 (E.D. Ky. July 2, 2015) (same). Accordingly, the court will follow well-settled Seventh Circuit precedent, which requires the court to analyze Plaintiff's claim under the deliberate indifference standard.

### B. The Merits

Pretrial detainees have a right to receive reasonable medical treatment for a serious injury or medical need. *See Anton v. Sheriff of DuPage Cnty., Ill.*, 47 F.Supp.2d 993, 998 (N.D. Ill. 1999) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989)). To support a claim that there has been a violation of that right, Plaintiff must establish two elements: (1) an objectively serious medical condition; and (2) deliberate indifference by a jail official to that condition. *Thomas v. Cook County Sheriff's Dep't*, 588 F.3d 445, 452 (7th Cir. 2009). "A medical condition is deemed to be objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Williams*, 509 F.3d at 401 (quoting *Henderson v. Sheahan*, 196 F.3d

839, 846 (7th Cir. 1999)). Dr. Rohana does not dispute this first element. As to the subjective component, deliberate indifference requires a showing that Dr. Rohana "'acted with a sufficiently culpable state of mind.'" *Thomas*, 588 F.3d at 452 (quoting *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008)). This requires the Plaintiff to establish that: (1) Dr. Rohana subjectively knew of the risk to Plaintiff's health and (2) disregarded that risk. *Id*. (citing *Collins v. Seeman*, 462 F.3d 757, 761 (7th Cir. 2006)).

Plaintiff brings two denial of treatment claims. First, he contends that Dr. Rohana violated his constitutional rights by failing to ensure that he received dialysis on Wednesday, October 23, before his release from the Jail. Second, he contends that Dr. Rohana violated his constitutional rights by failing to ensure he was receiving all of his medications.

### 1. Dialysis

The dialysis schedule for inmates at the Jail was Mondays, Wednesdays, and Fridays, unless there were more than four patients currently housed at the Jail who needed dialysis. (Mishler Dep. at 23). There is no evidence that there were more than four inmates needing dialysis; therefore, Plaintiff received dialysis on Friday, October 18, and on Monday, October 21. Notably, he also received dialysis on Tuesday, October 15, before his arrest. Plaintiff does not claim that the dialysis he received in Jail was substandard; instead, he argues that Dr. Rohana should have ensured that he received his dialysis treatment before he was released on Wednesday, October 23. "At the very least," he argues, "[Dr. Rohana] should have had a nurse check with custody officials to learn when Plaintiff was being released and decide whether it would be possible to give

9

him a dialysis run, and if not, instruct Plaintiff on what he should do when he left the jail."

The fatal blow to Plaintiff's claim is his inability to establish that Dr. Rohana was even aware that Plaintiff had been released from the Jail on October 23, or that Plaintiff was not taken to dialysis prior to his release. (*See* Rohana Decl. ¶ 5). In fact, Dr. Rohana testified, "We never – we are never contacted about release dates." (Rohana Dep. at 55). In the absence of any evidence that Dr. Rohana knew that Plaintiff had been released without first receiving dialysis, summary judgment on Plaintiff's Section 1983 claim is appropriate.

### 2. Medications

The evidence reflects that when Plaintiff first saw Dr. Rohana on October 17, he indicated that he was not receiving his medications. The following day, he saw Dr. Mishler, who wrote down a list of Plaintiff's medications. The list included Aspirin, Cardizem, Keppra, Lisinopril, Metoprolol, Nifedipine, Prilosec, Renvela, Coumadin, and Simvastatin. Dr. Rohana co-signed that list and testified that he believed Plaintiff was receiving his medications thereafter. (Rohana Decl. ¶¶ 2-3).

Plaintiff maintains the nursing staff failed to provide the following prescription medications while in the Jail: Diltiazem (calcium channel blocker), Lisinopril (for high blood pressure), Metoprolol (beta blocker), Nifedipine (calcium channel blocker), and Coumadin (blood thinner). The medications logs indicates he was provided all of these medications except, possibly, Nifedipine. There are no initials showing the medication was ever dispensed to Plaintiff. (Mishler Dep. Ex. 12). Notwithstanding this alleged

omission, Plaintiff never complained again to Dr. Rohana regarding any deprivation of medication. (Plaintiff Dep. at 81) (testifying he did not ask Dr. Rohana again about his medications because, by that time, he could ask the nurses who were responsible for delivering the medications). Moreover, the objective medical evidence indicates Plaintiff was receiving, at the very least, his blood pressure medications and his blood thinner. Plaintiff's blood pressure readings taken at his dialysis treatment on October 21 were at much lower levels than his October 18 visit. (*Compare* Mishler Dep. Ex. 7 (October 21) *with* Ex. 8 (October 18)). And Wishard Hospital medical records for his admission on October 22 indicate that his blood pressure was an optimal level (132/73), as was his subsequent visit in the early morning hours of October 23 (118/72). (Wishard Emergency Department Nursing Initial Assessment, dated October 22, 2013, and October 23, 2013). As for blood thinners, Dr. Rohana's orders from October 22 and 23 directing that Plaintiff be taken to Wishard Hospital note that Plaintiff was on Coumadin. (Rohana Decl., Ex. B). Dr. Rohana's order indicates, at the very least, that he believed Plaintiff was receiving Coumadin.

In the end, Plaintiff's claim suffers from the same infirmity as his "failure to give dialysis" claim – he failed to raise an issue of fact as to whether Dr. Rohana *knew* he was not receiving his medications as prescribed. Plaintiff's argument that Dr. Rohana should have known that the nursing staff was not providing him with his prescribed medications is a non-starter. "Section 1983 does not establish a system of vicarious responsibility. Liability depends on each defendant's knowledge and actions, not on the knowledge or

actions of persons they supervise." *Burks v. Raemisch*, 555 F.3d 592, 593-94 (7th Cir. 2009).  Summary judgment as to Plaintiff's Section 1983 claim is appropriate.

## IV. Conclusion

The court finds Dr. Rohana did not act with deliberate indifference to Plaintiff's serious medical needs.  Accordingly, Defendant's Motion for Summary Judgment (Filing No. 31) is **GRANTED**.

**SO ORDERED** this 23rd day of October 2015.

_____
RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.